UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIAN HUGHES, individually and on behalf of all others similarly situated, ) ) ) Plaintiff, ) ) v. ) ) SOUTHWEST AIRLINES CO.,[1] ) ) Defendant. ) | No. 18 C 5315<br><br>Judge Sara L. Ellis |

## OPINION AND ORDER

After running out of de-icer fluid, Defendant Southwest Airlines Co. ("Southwest") cancelled a number of flights in and out of Midway airport in Chicago, Illinois on February 11, 2018, including Plaintiff Brian Hughes' flight from Phoenix to Midway. Hughes then brought this class action lawsuit against Southwest for breach of contract and negligence for its failure to keep sufficient amounts of de-icer on hand on that date, as well as on December 8, 24, and 28, 2017, and January 12 and 15, 2018. Southwest moves to dismiss on the basis that both the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713(b)(1), and Federal Aviation Act ("FAA"), 49 U.S.C. § 40101 *et seq.*, preempt Hughes' claims, and on the basis that Hughes has failed to state a claim for breach of contract or negligence. Because Hughes has failed to state a claim for breach of contract and concedes that Texas' economic loss rule bars his negligence claim, the Court grants Southwest's motion to dismiss. In addition, because the ADA clearly preempts his negligence claim and amendment would be futile, the Court dismisses Hughes' negligence claim with prejudice.

---

[1] Plaintiffs named Southwest Airlines, Inc. as the defendant. However, Southwest notes in its motion that its proper name is Southwest Airlines Co. Doc. 16.

## BACKGROUND[2]

Hughes purchased a ticket to fly from Phoenix to Midway airport on February 11, 2018. Shortly before boarding, Southwest cancelled his flight and blamed the weather for the cancellation. However, Hughes discovered the next day that his flight was cancelled because Southwest ran out of de-icer, causing the airline to cancel 250 flights in and out of Midway on February 11, 2018. No other airlines ran out of de-icer that day. For the same reasons, Southwest cancelled flights on December 8, 24, and 28, 2017, and January 12 and 15, 2018.

Hughes' flight is governed by Southwest's contract of carriage, which provides:

    a.    Refusal to Transport

> General. Carrier may, in its sole discretion, refuse to transport, or may remove from an aircraft at any point, any Passenger in any of the circumstances listed below. The fare of any Passenger denied transportation or removed from Carrier's aircraft en route under the provisions of this Section will be refunded in accordance with Section 9. The sole **recourse** of any Passenger refused transportation or removed en route will be the recovery of the refund value of the unused portion of his Ticket. Under no circumstances shall Carrier be liable to any Passenger for any type of special, incidental, or consequential damages.
>
> (1)    Safety. Whenever such action is necessary, with or without notice, for reasons of aviation safety.
>
> (2)    Force Majeure Event: Whenever advisable due to Force Majeure Events outside of Carrier's control, including, without limitation acts of God,

---

[2] The facts in the background section are taken from Hughes' complaint and are presumed true for the purpose of resolving Southwest's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). A court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment. *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009). Where a document is referenced in the complaint and central to Hughes' claims, however, the Court may consider it in ruling on the motion to dismiss. *Id.* For those reasons, the Court also considers the contract of carriage governing Hughes' flight. *See* Doc. 17-1.

        meteorological events, such as storms, rain, wind, fire, fog, flooding, earthquakes, haze, or volcanic eruption. It also includes, without limitation, . . . any fact not reasonably foreseen, anticipated or predicted by Carrier.

(3)    Government Request or Regulation. Whenever such action is necessary to comply with any Federal Aviation Regulation or other applicable government regulation, or to comply with any governmental request for emergency transportation in connection with the national defense.

. . .

(8)    Comfort and Safety. Carrier may refuse to transport, or remove from the aircraft at any point, any Passenger in any of the circumstances listed below as may be necessary for the comfort or safety of such Passenger or other Passengers and crew members:

. . .

    (vii)    Any person who cannot be transported safely for any reason.

Doc. 17-1 § 6(a). In § 9(a), the contract provides that "[i]n the event Carrier cancels or fails to operate any flight according to Carrier's published schedule, or changes the schedule of any flight, Carrier will, at the request of a Passenger with a confirmed Ticket on such flight" either (1) "[t]ransport the Passenger at no additional charge on Carrier's next flight(s) on which space is available to the Passenger's intended destination" or (2) "[r]efund the unused portion of the Passenger's fare." *Id.* § 9(a)(1). The contract also has a clause for "limitation of liability," providing that, except to the extent provided in § 9(a), Southwest "shall not be liable for any failure or delay in operating any flight, with or without notice for reasons of aviation safety or when advisable, in its sole discretion, due to Force Majeure Events." *Id.* § 9(a)(4).

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**ANALYSIS**

**I.    Breach of Contract**

Southwest argues that Hughes' breach of contract claim fails because he does not cite the specific portion of the contract that he alleges Southwest violated and Southwest was permitted under the contract to cancel flights under the circumstances alleged (and thus Hughes does not successfully plead a breach). Hughes responds that he has satisfied his pleading burden under Rule 12(b)(6). The parties agree that Texas law governs their contract. Under Texas law, a party must allege facts sufficient to establish: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." *Wells v. Minn. Life Ins. Co.*, 885 F.3d 885, 889 (5th Cir. 2018).

4

This district is split regarding whether a plaintiff must identify the specific provisions of the contract that it alleges the defendant breached.[3] *See Peerless Network, Inc. v. MCI Commc'n Servs., Inc.*, No. 14 C 7417, 2015 WL 2455128, at *5 (N.D. Ill. May 21, 2015) (citing cases). A majority favor allowing the case to move forward if the plaintiff has alleged sufficient facts to establish a breach. *Id.* "What matters is whether [Hughes] 'alleged enough facts to put [Southwest] on fair notice of the contractual duty it breached.'" *Bortz v. Bank of Am., N.A.*, No. 16-cv-5338, 2016 WL 7104288, at *4 (N.D. Ill. Dec. 6, 2016) (quoting *Peerless*, 2015 WL 2455128, at *7). Here, Hughes has not provided sufficient detail in his complaint to put Southwest or the Court on notice of the contractual duty that it breached. Looking to the contract, it specifically provides the actions that Southwest must take if it cancels a flight—at the passenger's request, it will either provide the passenger with a refund or transport the passenger on the next available flight. Doc. 17-1 § 9(a)(1). Hughes does not allege that Southwest failed to provide a refund or transport him on the next available flight, and so it is not clear what contractual duty Southwest breached when it cancelled his flight due to insufficient amounts of de-icer. Rather than seeking to enforce the contract, Hughes' complaint seeks reimbursement for the inconvenience and additional expenses caused by the cancellation, obligations that the contract of carriage does not appear to contain. The specific portions of the contract that Hughes points to in his response do not save him—in § 4(a)(1), the contract of carriage provides that Hughes' ticket entitles him to transportation, subject to the contract's other provisions. *See* Doc.

---

[3] Southwest cites cases from the Fifth Circuit and Northern District of Texas, implying that they are determinative because Texas law governs the contract. Although Texas law governs the substantive law surrounding this claim, federal courts "evaluate the state-law claims" in cases such as these "under the federal pleading standards." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 672 (7th Cir. 2008). Although other circuits' interpretations of the federal pleading standard can be persuasive, the Seventh Circuit's interpretation binds this Court and thus it finds the decisions of other courts in this district interpreting Seventh Circuit caselaw more persuasive than district courts interpreting that of other circuits.

22 at 6–7. As discussed above, however, the contract is clear regarding what would happen if Southwest cancelled a flight, and Hughes does not allege that the airline breached those obligations. The Court grants Southwest's motion to dismiss Hughes' breach of contract claim.

## II.   Negligence

Hughes concedes that Texas' economic loss rule bars his negligence claim. Accordingly, the Court dismisses this claim.

## III.   Preemption Under the ADA

Southwest also argues that the ADA preempts Hughes' claims. The ADA contains an explicit preemption clause "[t]o ensure that the States would not undo federal deregulation with regulation of their own." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378, 112 S. Ct. 2031, 119 L. Ed. 2d 157 (1992). It prohibits states from enacting any "law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation." 49 U.S.C. § 41713(b). The ADA preempts state law causes of action when "(1) a state seeks to enact or enforce a law that (2) relates to airline rates, routes, or services, either by expressly referring to them or by having a significant economic effect upon them." *Volodarskiy v. Delta Air Lines, Inc.*, No. 11 C 00782, 2012 WL 5342709, at *6 (N.D. Ill. Oct. 29, 2012) (citing *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1432 (7th Cir. 1996)). State common law qualifies under this clause. *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 608 (7th Cir. 2000).

However, the Supreme Court noted an exception to the ADA's preemption in *American Airlines v. Wolens*, 513 U.S. 219, 115 S. Ct. 817, 130 L. Ed. 2d 715 (1995). *Wolens* held that the ADA does not preempt lawsuits "seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." *Id.* at 228. Whether the ADA preempts a claim "turns on

6

whether the right to be enforced stems from an external state law or policy or an internal restriction imposed by the parties' own agreement." *Volodarskiy*, 2012 WL 5342709, at *6.

First, Hughes does not respond to Southwest's argument regarding preemption of his negligence claim, and so he has waived the issue. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). However, even had he responded, Hughes' negligence claim clearly satisfies the requirements of ADA preemption. The claim is based in state common law, and it directly relates to airline rates and services. *See Midwest Trading Grp. v. GlobalTranz Enters.*, 59 F. Supp. 3d 887, 897 (N.D. Ill. 2014) (finding negligence claim preempted because plaintiff sought "to impose liability on the defendant for the manner in which it carried out its contracted-for services"). Because amendment of this claim would be futile, the Court dismisses the claim with prejudice.

Analysis regarding whether the ADA preempts Hughes' negligence claim is necessary here, despite the Court having already found that Hughes failed to state a claim for negligence, because Southwest seeks to dismiss that claim with prejudice. However, with regard to the breach of contract claim, the Court declines to decide the issue at this time.[4] On this issue, Hughes argues that he is merely seeking to enforce the provisions of his contract with Southwest. Southwest responds that Hughes seeks damages outside of what he is entitled to under the contract and thus seeks to use state law to enlarge the contract outside of the parties' original agreement. Hughes' failure to sufficiently identify the contractual obligation that Southwest breached not only fails to state a claim for breach of contract but also precludes the Court from finding that Hughes identified a self-imposed undertaking that would bring this breach of contract claim within the *Wolens* exception to ADA preemption. *Cf. Volodarskiy*, 2012 WL 5342709, at *6–7 (finding that the plaintiffs failed to state a claim for breach of contract because

---

[4] Similarly, the Court need not reach whether the FAA preempts Hughes' claims.

7

the regulation they sought to impose was not expressly incorporated into the contract, and, for the same reasons, the ADA preempted the claim). However, the Court does not rule out that Hughes could amend his complaint to sufficiently identify such a contractual obligation.

## CONCLUSION

For the foregoing reasons, the Court grants Southwest's motion to dismiss [16], dismisses Hughes' breach of contract claim without prejudice and dismisses his negligence claim with prejudice. The Court orders the Clerk to change the caption to reflect Southwest's proper name, Southwest Airlines Co.

Dated: March 26, 2019

SARA L. ELLIS
United States District Judge