UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIAN HUGHES, individually and on behalf, of all others similarly situated, ) ) ) Plaintiff, ) ) ) v. ) ) SOUTHWEST AIRLINES CO., ) ) Defendant. ) | No. 18 C 5315 Judge Sara L. Ellis |

**OPINION AND ORDER**

On February 11, 2018, Defendant Southwest Airlines Co. ("Southwest") canceled Plaintiff Brian Hughes' flight from Phoenix, Arizona, to Chicago, Illinois, because it ran out of de-icer fluid. Hughes ended up flying to Omaha, Nebraska, and incurred additional costs for lodging, food, and parking, before flying to Chicago the next day. Hughes subsequently brought this putative class action lawsuit alleging breach of contract and negligence and seeking consequential damages on behalf of all Southwest customers whose flights were similarly canceled on that date, as well as on December 8, 24, and 28, 2017, and January 12 and 15, 2018. This Court previously dismissed Hughes' negligence claim with prejudice in its March 26, 2019, Opinion and Order, on the basis of preemption by the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713(b)(1). The Court dismissed Hughes' breach of contract claim without prejudice for failure to state a claim after finding that Hughes had not identified the specific contractual duty that Southwest breached. Hughes then filed an amended complaint re-alleging breach of contract, and Southwest now moves to dismiss. Because Hughes has again failed to sufficiently plead the elements necessary to assert a breach of contract, the Court finds that Hughes has failed to state a claim upon which relief may be granted, and that further leave to amend the complaint

would be futile.[1]  Therefore, the Court grants Southwest's motion to dismiss and dismisses the amended complaint with prejudice.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits.  Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).  In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor.  *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).  To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

Southwest argues that Hughes' amended complaint must be dismissed for two reasons.  First, Southwest argues that Hughes has failed to plead the elements of his breach of contract claim.  Specifically, Southwest contends that Hughes has failed to identify a contractual duty that Southwest breached, and that Hughes has not pleaded damages because the Contract of Carriage

---

[1] The Court treats the facts set out in Hughes' amended complaint as true for the purpose of resolving Southwest's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).  Additionally, the Court has considered the contract of carriage governing Hughes' flight in deciding this motion. *See Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009) (court may consider extrinsic evidence referenced in the complaint and central to the plaintiff's claims).  The Court presumes familiarity with its March 26, 2019, Opinion and Order, Doc. 26, and refers the reader to the background section of the previous Order for a more detailed description of the underlying facts.

(the "Contract") explicitly precludes consequential damages. Second, Southwest argues that both the ADA and the Federal Aviation Act ("FAA"), 49 U.S.C. § 40101 *et seq.*, preempt his claim. The Court first addresses the sufficiency of Hughes' claim. Because this analysis is determinative, the Court concludes this Opinion by explaining why preemption under the ADA and FAA does not apply in this case.

I.  **Breach of Contract**

    A.  **Breach of Duty**

To assert a claim for breach of contract under Texas law[2], a party must allege: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." *Wells v. Minn. Life Ins. Co.*, 885 F.3d 885, 889 (5th Cir. 2018) (citation omitted). In his amended complaint, Hughes asserts that Southwest's duty to stock sufficient amounts of de-icer is, in essence, an implied term of the Contract. To support his claim, Hughes first points to § 4 of the Contract to assert that, as a ticket holder, he was entitled to transportation to Chicago:

> a. Tickets
>
> > (1) No person shall be entitled to transportation except upon presentation of a valid Ticket or proof of identification acceptable to Carrier to confirm that transportation has been purchased. Such Ticket shall entitle the Passenger to transportation subject to this *Contract of Carriage* and, in particular, certain terms and conditions as follows.

Doc. 31-1 at 13.[3] Section 4 also contains the following provision regarding what would happen if Southwest canceled a flight:

---

[2] The parties agree that Texas law applies to this action according to the Contract's Choice of Law provision.
[3] The Court quotes the Contract of Carriage attached to Southwest's motion, Doc. 31-1, which became effective on September 17, 2018, and postdates the current action by several months. Neither party

  c. Refunds

    (4) Delays or Involuntary Cancellations. If a Passenger's scheduled transportation is canceled, terminated, or delayed before the Passenger has reached his final destination as a result of a flight cancellation, Carrier-caused missed connection, flight delay, or omission of a scheduled stop, Carrier will either transport the Passenger at no additional charge on another of Carrier's flights, refund the fare for the unused transportation in accordance with the form of payment utilized for the Ticket, or provide a credit for such amount toward the purchase of future travel.

*Id.* at 15. Hughes next points to § 9, titled "Service Interruptions," to argue that the Contract only limits Southwest's liability for flight cancellations due to unforeseeable, or "Force Majeure," events:

  a. Failure to Operate as Scheduled

    (1) Canceled Flights or Irregular Operations. In the event Carrier cancels or fails to operate any flight according to Carrier's published schedule, or changes the schedule of any flight, Carrier will, at the request of a Passenger with a confirmed Ticket on such flight, take one of the following actions:

      (i) Transport the Passenger at no additional charge on Carrier's next flight(s) on which space is available to the Passenger's intended destination, in accordance with Carrier's established reaccommodation practices; or

      (ii) Refund the unused portion of the Passenger's fare in accordance with Section 4c.

    . . .

---

suggests that this version differs materially from the Contract effective at the time of the alleged event, and neither party has provided an alternative copy to the Court. Thus, the Court considers it to be representative of the Contract at issue. Additionally, where the ECF header differs from the page number of the original document, as it does here, this Order cites to the former.

4

> (4) Limitation of Liability. Except to the extent provided in Section 9a, Carrier shall not be liable for any failure or delay in operating any flight, with or without notice for reasons of aviation safety or when advisable, in its sole discretion, due to Force Majeure Events, including, without limitation, acts of God, meteorological events, such as storms, rain, wind, fire, fog, flooding, earthquakes, haze, or volcanic eruption. It also includes, without limitation, government action, disturbances or potentially volatile international conditions, civil commotions, riots, embargoes, wars, or hostilities, whether actual, threatened, or reported, strikes, work stoppage, slowdown, lockout or any other labor related dispute involving or affecting Carrier's service, mechanical difficulties by entities other than Carrier, Air Traffic Control, the inability to obtain fuel, airport gates, labor, or landing facilities for the flight in question or any fact not reasonably foreseen, anticipated or predicted by Carrier.

*Id*. at 39. Hughes argues that since § 9(a)(4) specifically disclaims liability for events that are outside of Southwest's control, the implication is that "Southwest would do everything that was both foreseeable and in its control to fulfill its contractual obligation to fly Mr. Hughes to his destination." Doc. 33 at 8. Southwest responds that there is no implied term that it must carry a certain amount of de-icer, and that to imply such a duty would contradict the express terms of the Contract.

Texas law disfavors implying terms into a contract. *See Universal Health Servs., Inc. v. Renaissance Women's Grp., P.A.*, 121 S.W.3d 742, 747 (Tex. 2003) ("In rare circumstances . . . a court may imply a covenant in order to reflect the parties' real intentions."). There must be "a satisfactory basis in the express contracts of the parties which makes it necessary to imply certain duties and obligations in order to effect the purposes of the parties in the contracts made." *Id.* at 747–48. "[A] covenant will not be implied simply to make a contract fair, wise, or just." *Id*. at

5

748. Nor can the Court imply terms that contradict the express terms of the Contract. *Hiles v. Arnie & Co., P.C.*, 402 S.W.3d 820, 832 (Tex. App. 2013) ("If the parties have expressly stated the terms of their agreement, they have created an express contract and are bound by it to the exclusion of conflicting implied terms." (citation omitted)).

Here, there is not a basis in the Contract to imply that Southwest would always maintain enough de-icer to operate its flights. §§ 4(c)(4) and 9(a)(1) explicitly outline what Southwest must do in case of flight cancellations without any qualifying language. *See* Doc. 31-1 at 15 ("If a Passenger's scheduled transportation is canceled, terminated, or delayed before the Passenger has reached his final destination as a result of a flight cancellation . . . Carrier will [transport, refund, or credit the Passenger's fare]."), 39 (In the event Carrier cancels or fails to operate any flight . . . Carrier will . . . transport the Passenger [on the next available flight or refund the fare]."). This contemplates that Southwest could still fulfill the Contract if it canceled Hughes' flight. Thus, implying additional terms that Southwest would always stock sufficient de-icer to fly in cold weather events is hardly necessary to effectuate the parties' intentions. *Universal Health Servs.*, 121 S.W.3d at 747.

Nor does the interplay between § 9(a)(1) and 9(a)(4) require that the Court adopt Hughes' argument. Section 9 specifically states that Southwest is not "liable for any failure or delay in operating any flight, with or without notice for reasons of aviation safety **or** when advisable, in its sole discretion, due to Force Majeure Events." Doc. 31-1 at 39 (emphasis added). This is a disjunctive clause, meaning that canceling flights due to "aviation safety" is not necessarily limited to unforeseeable, or "Force Majeure" events. *Bd. of Ins. Comm'rs of Tex. v. Guardian Life Ins. Co. of Tex.*, 180 S.W.2d 906, 908 (Tex. 1944) ("Ordinarily, the words 'and' and 'or' are in no sense interchangeable terms, but, on the contrary, are used in the structure of language for

6

purposes entirely variant, the former being strictly of a conjunctive, the latter, of a disjunctive, nature." (citation omitted)). The availability of de-icer is clearly related to aviation safety given federal law and regulations on the subject. *See* 49 U.S.C. § 44722 (requiring Federal Aviation Administration to prescribe regulations related to the safety of airplanes during winter conditions and to consider feasibility of de-icing timeframes, and availability of de-icing fluids and de-icing equipment); 14 C.F.R. § 121.629 (requiring airplane operators to adopt approved de-icing programs); *see also Vass v. Facility Servs. & Sys., Inc.*, No. 3:06CV1932, 2009 WL 4015605, at *3 (M.D. Pa. Nov. 19, 2009) ("[D]eicing is integral to the safe operation of an aircraft, and federal authority preempts state action to set safety standards in that area."). Therefore, the term "aviation safety" within § 9(a)(4) includes flight cancelations due to a lack of de-icer, regardless of whether it was because of Southwest's own doing.

But even if the Court agreed with Hughes that canceling a flight due to running out of de-icer is conceptually distinct from canceling a flight for aviation safety concerns, his argument runs into another problem. Section 10 of the Contract explicitly disclaims additional implied terms. Doc. 31-1 at 43 ("This *Contract of Carriage* represents the entire, integrated agreement between the parties relating to transportation by Carrier, and shall supersede all prior representations, understandings or agreements pertaining thereto, either oral or written. No other covenants, warranties, undertakings or understandings may be implied, in law or in equity."). Hughes does not explain how the Court can imply additional terms consistent with this clause. Nor does he seek to vary it, for Hughes asserts that the Contract is unambiguous and asks the Court to enforce its plain terms.

The Contract is unambiguous with respect to additional implied terms. *See Universal Health Servs.*, 121 S.W.3d at 747 ("If contract language can be given a certain or definite

meaning, then it is not ambiguous; it should be interpreted by a court as a matter of law."); *Gallagher Headquarters Ranch Dev., Ltd. v. City of San Antonio*, 303 S.W.3d 700, 702 (Tex. 2010) ("Interpretation of an unambiguous contract is an issue of law."). There is not a sufficient basis in the Contract to imply that Southwest had a duty to carry sufficient de-icer for all its flights. *Universal Health Servs.*, 121 S.W.3d at 747–48. Additionally, implying such a duty would directly contradict the express terms of the Contract. *Hiles*, 402 S.W.3d at 832. Therefore, there is no implied duty that Southwest need stock enough de-icer to operate all of its flights.

  **B.**  **Damages**

  Southwest also argues that the Contract as a whole disclaims damages for flight cancellations, and it specifically prohibits any consequential damages for the same. Hughes responds that the explicit disclaimer of liability for events beyond Southwest's control does nothing to limit liability for damages that were the foreseeable result of Southwest's own actions.

  As previously explained, running out of de-icer implicates aviation safety, regardless of whether it was a foreseeable event. For this reason, § 9(a)(4)'s explicit disclaimer of liability for flights canceled due to aviation safety concerns precludes Hughes from obtaining damages caused by his canceled flight. The case that Hughes cites in support of his argument, *Georgia Nut Co. v. C.H. Robinson Co.*, does not help him. No. 17 C 3018, 2018 WL 2009499 (N.D. Ill. Apr. 30, 2018). In *Georgia Nut*, this Court held that the plaintiff could pursue consequential damages for its breach of contract claim even though the contract did not expressly allow for consequential damages. *Id.* at 3. This is not the same thing as seeking damages that the contract expressly forbids.

  In addition to § 9, Southwest also points to an additional disclaimer in § 6:

8

      6.      Acceptance of Passengers

         a.      Refusal to Transport

> General. Carrier may, in its sole discretion, refuse to transport, or may remove from an aircraft at any point, any Passenger in any of the circumstances listed below. The fare of any Passenger denied transportation or removed from Carrier's aircraft en route under the provisions of this Section will be refunded in accordance with Section 9. The sole **recourse** of any Passenger refused transportation or removed en route will be the recovery of the refund value of the unused portion of his Ticket. Under no circumstances shall Carrier be liable to any Passenger for any type of special, incidental, or consequential damages.

Doc. 31-1 at 17. Although § 6 does not explicitly refer to flight cancellations, the context indicates that the disclaimer applies without limitation whenever Southwest refuses to transport a customer, including "[w]henever such action is necessary . . . for reasons of aviation safety." *Id*. Courts have held that damage disclaimers like this are valid. See *Glidden Co. v. CDNE, Inc.*, No. 12-09-00283-CV, 2011 WL 686286, at *8 (Tex. App. Feb. 28, 2011) ("Consequential damages can be disclaimed."); *Wade & Sons, Inc. v. Am. Standard, Inc.*, 127 S.W.3d 814, 824 (Tex. App. 2003) (incidental and consequential damages barred by contract). Hughes does not address § 6, so the Court finds no reason to assume his claim could survive this additional disclaimer of liability.

    For these reasons, Hughes' claim also fails because he has not shown that he has an actionable claim for damages. Because the Court previously dismissed Hughes' complaint, Hughes has again failed to sufficiently allege the elements of a breach of contract claim, and the Contract expressly precludes Hughes' claim, an additional opportunity to amend would be futile, and so the Court dismisses this claim with prejudice. *See Runnion ex rel. Runnion v. Girl Scouts*

*of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015) (court may dismiss complaint with prejudice "[w]here it is clear that the defect cannot be corrected so that amendment is futile"); *Vargas–Harrison v. Racine Unified Sch. Dist.*, 272 F.3d 964, 974 (7th Cir. 2001) (leave to amend is futile if a new claim would be unable to survive a Rule 12(b)(6) motion to dismiss).

**II.     Preemption**

Southwest argues that the ADA and FAA also preempt Hughes' claim. The ADA prohibits states from enacting laws or regulations "related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). This encompasses common law claims. *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 284, 134 S. Ct. 1422, 188 L. E. 2d 538 (2014). In *American Airlines, Inc. v. Wolens*, the Supreme Court created an exception for "routine breach-of-contract claims" that seek to enforce an airline's "own, self-imposed undertakings." 513 U.S. 219, 220, 115 S. Ct. 817, 130 L. Ed. 2d 715 (1995). The Court drew a distinction between imposing a State's "own substantive standards with respect to rates, routes, or services" onto an airline, as distinct from "a party who claims and proves that an airline dishonored a term the airline itself stipulated." *Id.* at 232–33. This distinction "confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." *Id.* at 233. Although the FAA does not contain an express preemption clause, most courts have held that it impliedly preempts state regulation of airline safety. *See, e.g.*, *Montalvo v. Spirit Airlines*, 508 F.3d 464, 468 (9th Cir. 2007) ("[T]he FAA preempts the entire field of aviation safety through implied field preemption."); *Int'l Aerobatics Club Chapter 1 v. City of Morris*, 76 F. Supp. 3d 767, 781 (N.D. Ill. 2014) (noting that although "[t]he Seventh Circuit has not yet decided" whether the FAA occupies the entire field of air safety, "police powers of a local government must yield to the pervasive air safety regulations enforced by the FAA"). The FAA also preserves state tort claims. *See Wolens*, 513 U.S. at 220 ("Court adjudication of routine

breach-of-contract claims, furthermore, accords due recognition to Congress' retention of the FAA's saving clause, which preserves 'the remedies now existing at common law or by statute.'").

Here, Hughes does not seek to "enlarge[] or enhance[] [the parties' agreement] based on state laws or policies," for he argues that Southwest's duty to carry de-icer was implicit in the agreement itself. *Id.* at 233. Because the Court has already found that Hughes has failed to state a claim in this regard, there is no preemption analysis to apply. *See Cox v. Spirit Airlines, Inc.*, No. 18-3484-CV, 2019 WL 4263385, at *2 (2d Cir. Sept. 10, 2019) (explaining that where the defendant's duty falls within the scope of the contract there is no preemption, but if the duty falls outside the scope of the contract then the claim fails because the defendant "did not breach any alleged contractual obligation . . . . not because Plaintiffs' claims are preempted").

## CONCLUSION

For these reasons, the Court grants Southwest's motion to dismiss the amended complaint [30]. The Court dismisses the amended complaint with prejudice and terminates this case.

Dated: September 17, 2019

_____
SARA L. ELLIS
United States District Judge